UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

FILED
CHARLOTTE, NC

JUN 15 2026

US DISTRICT COURT
WESTERN DISTRICT OF NC

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:26 cr 128-MOC |
| | ) | |
| v. | ) | **BILL OF INFORMATION** |
| | ) | |
| JASON LOTTMAN | ) | 18 U.S.C. § 1343 |
| | ) | |

## THE UNITED STATES ATTORNEY CHARGES:

At the specified times and at all relevant times:

### Introductory Allegations

1. From as early as October 2023 through at least January 2025, the defendant, JASON LOTTMAN, engaged in a scheme to fraudulently obtain more than $1 million in funds from victim customers and investors associated with his wedding venue, Champagne Manor. To acquire victim funds, LOTTMAN made numerous false and fraudulent representations, concealed and omitted material facts, and told deceptive half-truths regarding Champagne Manor. For example, in mid-2024, after the venue defaulted on its mortgage and foreclosure proceedings commenced, LOTTMAN concealed this fact from victims and continued to solicit funds.

### Background

#### *Champagne Manor*

2. LOTTMAN was a resident of Charlotte, North Carolina.

3. LOTTMAN was the owner and manager of The Veretta Group, LLC ("The Veretta Group"), a North Carolina limited liability company.

4. LOTTMAN was the owner and manager of Champagne Manor of North Carolina LLC ("Champagne Manor"), a North Carolina limited liability company.

5. On or about April 7, 2021, LOTTMAN, through The Veretta Group, purchased real property located at 4707 Sugar and Wine Road, Monroe, North Carolina 28110 (the "Property") for the purpose of operating a wedding venue through his business, Champagne Manor.

6. At various points in time, LOTTMAN solicited investors to provide funds in exchange for an ownership interest in Champagne Manor. He also solicited victims to make short term investments into Champagne Manor in exchange for guaranteed returns.

7. For customers, LOTTMAN offered an "all-inclusive wedding" package that included numerous vendors such as photography, DJ, hair and make-up, florist, and catering, amongst others. Per the package, LOTTMAN was to make payment to the vendors directly. If a customer opted to remove a vendor or contract directly with a vendor, LOTTMAN offered a "cash out" option in which he represented to repay the customer for the funds allocated to the vendor prior to the wedding.

### *Lender 1*

8. In or around January 2024, LOTTMAN and The Veretta Group obtained financing on the Property through Lender 1.

9. On or about May 20, 2024, Lender 1 issued a letter to LOTTMAN and The Veretta Group regarding a default on the loan and demanded that the balance, which was in excess of $2.3 million, be paid within 10 days of receipt of the letter.

10. LOTTMAN and The Veretta Group failed to make payment in full to Lender 1 and Lender 1 initiated foreclosure proceedings.

11. On or about October 7, 2024, Lender 1 purchased the Property at a foreclosure sale.

12. By approximately December 20, 2024, LOTTMAN no longer was in possession of the Property and no longer operated Champagne Manor.

### **The Fraud Scheme**

13. Throughout the scheme, LOTTMAN made false and fraudulent representations, concealed and omitted material facts, and told deceptive half-truths regarding Champagne Manor and its financial stability.

14. By no later than May 20, 2024, LOTTMAN was aware that the Property was in default and foreclosure proceedings were being initiated by Lender 1.

15. LOTTMAN concealed facts related to the foreclosure proceeding and continued to solicit and obtain funds from customers and investors despite knowing that future wedding services and any return on investment were extremely unlikely.

16. In addition to concealing the financial status of Champagne Manor, it was also part of the scheme and artifice to defraud that LOTTMAN made a series of other misrepresentations related to Champagne Manor to receive payments from victims. For example:

> a. **Glass Ballroom**. LOTTMAN represented to customers that Champagne Manor was acquiring a glass ballroom to provide an indoor airconditioned option for ceremonies and receptions. LOTTMAN made numerous misrepresentations to customers regarding the glass ballroom including, but not limited to, the timing of completion, the status of shipment and delivery, and the status of payment. In truth and in fact, LOTTMAN only paid a

Case 3:26-cr-00128-MOC-DCK    Document 1    Filed 06/15/26    Page 2 of 4

fraction of the cost of the glass ballroom, and it was never shipped to the Property.

b. **Partner Program**. LOTTMAN offered customers the opportunity to participate in a "Partner Program" in which the customer made a substantial monetary deposit up front towards their wedding and, in exchange, LOTTMAN promised to return the majority of the deposit over an 18-month period. For example, LOTTMAN offered one customer a Partner Program package in which the customer would pay $54,900.00 up front and receive $50,000.00 back over an 18-month period, which purportedly resulted in the customer receiving a wedding for less than $5,000.00. As LOTTMAN stated, "[t]his gives you your wedding of a lifetime and puts almost the entire cost of it back in your pocket over 18 months. Incredible!" As collateral for the Parter Program, LOTTMAN offered a security interest in a glass ballroom that he did not own. In truth and in fact, LOTTMAN made little to no repayment to customers enrolled in the Partner-Program.

c. **Promotions**. LOTTMAN offered a variety of time-sensitive promotions to induce customers to make payments that could be applied as credits or subsequent refunds toward their weddings. LOTTMAN made a series of misrepresentations in conjunction with the promotions including, but not limited to, that the glass ballroom was almost completely paid off and, in one instance, LOTTMAN falsely promised customers that a portion of the promotion would be provided to a local animal shelter.

17. In furtherance of the scheme, LOTTMAN falsely represented to victims that they would receive payments by certain dates. When LOTTMAN failed to make payments as promised, he then concealed and attempted to conceal the scheme from victims by making false misrepresentations about why he failed to make timely payments.

18. For customers that purchased "all-inclusive" weddings, LOTTMAN repeatedly failed to pay vendors as promised prior to weddings leaving customers to pay out-of-pocket for vendors that they already bargained for in the original contract.

19. In furtherance of the scheme to defraud, LOTTMAN directed the victims to make payments to him generally through peer-to-peer transfers and credit card payments.

<u>**COUNT ONE**</u>
18 U.S.C. § 1343
(Wire Fraud)

20. Paragraphs 1 through 19 of this Bill of Information are re-alleged and incorporated by reference as though fully set forth herein.

21. From as early as October 2023 through at least January 2025, in Union County, within the Western District of North Carolina and elsewhere, the defendant,

**JASON LOTTMAN,**

3

with the intent to defraud, did knowingly and intentionally devise the above described scheme and artifice to defraud victims and obtain money from victims by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, and, for the purpose of executing such scheme and artifice, did cause to be transmitted by means of wire communications in interstate commerce any writing, signal, or sound, in that, among other things, the defendant sent and caused to be sent electronic communications and electronic financial transactions in interstate commerce.

All in violation of Title 18, United States Code, Section 1343.

## NOTICE OF FORFEITURE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

    a.    All property which constitutes or is derived from proceeds of Count One set forth in this Bill of Information;

    b.    If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a).

The following property is subject to forfeiture on one or more of the grounds stated above:

    a.    A forfeiture money judgment in the amount of at least $1,469,947.62, such amount constituting the proceeds of Count One set forth in this Bill of Information.

RUSS FERGUSON
UNITED STATES ATTORNEY

ERIC A. FRICK
SPECIAL ASSISTANT UNITED STATES ATTORNEY

4