# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | DOCKET NO. 3:26-cr-00128-MOC |
| v. | ) | |
| | ) | **FACTUAL BASIS** |
| JASON LOTTMAN | ) | |
| | ) | |

NOW COMES the United States of America, by and through Russ Ferguson, United States Attorney for the Western District of North Carolina, and hereby files this Factual Basis in support of the plea agreement filed simultaneously in this matter.

This Factual Basis is filed pursuant to Local Criminal Rule 11.2 and does not attempt to set forth all of the facts known to the United States at this time. By their signatures below, the parties expressly agree that there is a factual basis for the guilty plea(s) that the defendant will tender pursuant to the plea agreement, and that the facts set forth in this Factual Basis are sufficient to establish all of the elements of the crime(s). The parties agree not to object to or otherwise contradict the facts set forth in this Factual Basis.

Upon acceptance of the plea, the United States will submit to the Probation Office a "Statement of Relevant Conduct" pursuant to Local Criminal Rule 32.4. The defendant may submit (but is not required to submit) a response to the Government's "Statement of Relevant Conduct" within seven days of its submission. The parties understand and agree that this Factual Basis does not necessarily represent all conduct relevant to sentencing. The parties agree that they have the right to object to facts set forth in the presentence report that are not contained in this Factual Basis. Either party may present to the Court additional relevant facts that do not contradict facts set forth in this Factual Basis.

1. JASON LOTTMAN was a resident of Charlotte, North Carolina

2. LOTTMAN was the owner and manager of The Veretta Group, LLC ("The Veretta Group"), a North Carolina limited liability company.

3. LOTTMAN was the owner and manager of Champagne Manor of North Carolina LLC ("Champagne Manor"), a North Carolina limited liability company.

4. On or about April 7, 2021, LOTTMAN, through The Veretta Group, purchased real property located at 4707 Sugar and Wine Road, Monroe, North Carolina 28110 (the "Property") for the purpose of operating a wedding venue through his business, Champagne Manor.

5. At various points in time, LOTTMAN solicited investors to provide funds in exchange for an ownership interest in Champagne Manor. He also solicited victims to make short term investments into Champagne Manor in exchange for guaranteed returns.

6. For customers, LOTTMAN offered an "all-inclusive wedding" package that included numerous vendors such as photography, DJ, hair and make-up, florist, and catering, amongst others. Per the package, LOTTMAN was to make payment to the vendors directly. If a customer opted to remove a vendor or contract directly with a vendor, LOTTMAN offered a "cash out" option in which he represented to repay the customer for the funds allocated to the vendor prior to the wedding.

7. In or around January 2024, LOTTMAN and The Veretta Group obtained financing on the Property through Lender 1.

8. On or about May 20, 2024, Lender 1 issued a letter to LOTTMAN and The Veretta Group regarding a default on the loan and demanded that the balance, which was in excess of $2.3 million, be paid within 10 days of receipt of the letter.

9. LOTTMAN and The Veretta Group failed to make payment in full to Lender 1 and Lender 1 initiated foreclosure proceedings.

10. On or about October 7, 2024, Lender 1 purchased the Property at a foreclosure sale.

11. By approximately December 20, 2024, LOTTMAN no longer was in possession of the Property and no longer operated Champagne Manor.

12. From as early as October 2023 through at least January 2025, LOTTMAN made false and fraudulent representations, concealed and omitted material facts, and told deceptive half-truths regarding Champagne Manor and its financial stability.

13. By no later than May 20, 2024, LOTTMAN was aware that the Property was in default and foreclosure proceedings were being initiated by Lender 1.

14. LOTTMAN concealed facts related to the foreclosure proceeding and continued to solicit and obtain funds from customers and investors despite knowing that future wedding services and any return on investment were extremely unlikely.

15. In addition to concealing the financial status of Champagne Manor, it was also part of the scheme and artifice to defraud that LOTTMAN made a series of other misrepresentations related to Champagne Manor to receive payments from victims. For example:

   a. **Glass Ballroom.** LOTTMAN represented to customers that Champagne Manor was acquiring a glass ballroom to provide an indoor airconditioned option for ceremonies and receptions. LOTTMAN made numerous misrepresentations to customers regarding the glass ballroom including, but not

2

limited to, the timing of completion, the status of shipment and delivery, and the status of payment. In truth and in fact, LOTTMAN only paid a fraction of the cost of the glass ballroom, and it was never shipped to the Property.

b. **Partner Program.** LOTTMAN offered customers the opportunity to participate in a "Partner Program" in which the customer made a substantial monetary deposit up front towards their wedding and, in exchange, LOTTMAN promised to return the majority of the deposit over an 18-month period. For example, LOTTMAN offered one customer a Partner Program package in which the customer would pay $54,900.00 up front and receive $50,000.00 back over an 18-month period, which purportedly resulted in the customer receiving a wedding for less than $5,000.00. As LOTTMAN stated, "[t]his gives you your wedding of a lifetime and puts almost the entire cost of it back in your pocket over 18 months. Incredible!" As collateral for the Parter Program, LOTTMAN offered a security interest in a glass ballroom that he did not own. In truth and in fact, LOTTMAN made little to no repayment to customers enrolled in the Partner-Program.

c. **Promotions.** LOTTMAN offered a variety of time-sensitive promotions to induce customers to make payments that could be applied as credits or subsequent refunds toward their weddings. LOTTMAN made a series of misrepresentations in conjunction with the promotions including, but not limited to, that the glass ballroom was almost completely paid off and, in one instance, LOTTMAN falsely promised customers that a portion of the promotion would be provided to a local animal shelter.

16. In furtherance of the scheme, LOTTMAN falsely represented to victims that they would receive payments by certain dates. When LOTTMAN failed to make payments as promised, he then concealed and attempted to conceal the scheme from victims by making false misrepresentations about why he failed to make timely payments.

17. For customers that purchased "all-inclusive" weddings, LOTTMAN repeatedly failed to pay vendors as promised prior to weddings leaving customers to pay out-of-pocket for vendors that they already bargained for in the original contract.

18. In furtherance of the scheme to defraud, LOTTMAN directed the victims to make payments to him generally through peer-to-peer transfers and credit card payments. Therefore, LOTTMAN transmitted and caused the transmission of wire communication in interstate commerce.

19. The amount of loss that was known to or reasonably foreseeable by LOTTMAN was more than $750,000 but less than $1,500,000.

20. The offense involved ten or more victims.

3

21. In carrying out the fraud scheme, LOTTMAN acted with an intent to defraud, and at all times, LOTTMAN acted intentionally, knowingly and willfully and not by accident or mistake.

RUSS FERGUSON
UNITED STATES ATTORNEY

Eric A. Frick
SPECIAL ASSISTANT UNITED STATES ATTORNEY

### Defendant's Counsel's Signature and Acknowledgment

I have read this Factual Basis and the Bill of Information in this case, and have discussed them with the defendant. Based on those discussions, I am satisfied that the defendant understands the Factual Basis and the Bill of Information. I hereby certify that the defendant does not dispute this Factual Basis.

Elizabeth Gerber, Attorney for Defendant

DATED: 6/12/26

4